## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIE WILLIAMS,

     Plaintiff,

v.                                          Case No. 3:24-cv-367-BJD-SJH

CHARLES DAVID RITCHEY et
al.,

     Defendants.

_____/

## **O R D E R**

**THIS CAUSE** is before the Court on the Motions for Summary Judgment filed by Defendants Charles Ritchey, W. J. Mooneyham, the Estate of D. L. Starling, the Estate of Bryant Mickler (collectively, the "Defendant Officers"), and the City of Jacksonville (Docs. 105-109); Plaintiff's Consolidated Response (Doc. 116); and Defendants' Replies (Docs. 120-124).

Plaintiff Willie Williams spent almost five decades in prison for crimes supported by questionable evidence that ultimately caused the State Attorney's Office for the Fourth Judicial Circuit of Florida (the "SAO") to not oppose a motion to vacate his sentence.

On October 8, 1975, a green Buick Electra parked near the Westconnett Produce Store. (Doc. 104.21 at 1). The driver of the car walked into the Produce Store, robbed two individuals, then shot them in the head. Id. at 3.

Mr. Williams and Alfred Mitchell were the only individuals in the Buick. Id. Eventually, Mr. Mitchell killed himself before being apprehended, while Mr. Williams claimed he was an innocent passenger that did not participate in the crimes. Id. at 3.

The State of Florida did not believe Mr. Williams and charged him with robbery and attempted murder. Id. at 15. Mr. Williams was convicted after a trial, which focused on the identity of the shooter. Id. at 13. In establishing that Mr. Williams was the shooter, the State of Florida obfuscated evidence and failed to disclose, among other things, that a crucial eyewitness was hypnotized before identifying Mr. Williams. Id. at 15. That event is the crux of this case.

David Phillips was one of the individuals shot in the head at the Produce Store. Id. at 8-9. Initially, Mr. Phillips could not identify the person that robbed and shot him. Id. Three weeks after Mr. Phillips "forgot the face" of the shooter, Defendant Mickler placed Mr. Phillips under hypnosis then showed Mr. Phillips another photo lineup.[1] Id. Mr. Phillips selected Mr. Williams as the shooter. Id. at 9.

Mr. Phillips, the detectives, and the State of Florida made no mention of the hypnosis during their depositions and prosecution. Id. The police

---

[1] The State Attorney's Office concedes there were also irregularities with the manner in which Mr. Phillips was shown potential perpetrators.

reports available to the defense failed to detail the hypnosis, and the State offered no evidence of the hypnosis at trial. Id. When Mr. Williams's defense counsel questioned the lead detective of the case, Defendant Ritchey, Defendant Ritchey omitted discussion of Defendant Mickler's hypnosis. Id.

During a post-conviction review, in 2023 the SAO was able to determine hypnosis occurred because of notes written by prosecutors during the case. Id. at 10. After review of Mr. Williams's case, the SAO declared it would not oppose the vacating of his conviction and subsequent nolle pros of his charges. Id. at 15. This civil suit followed.

Plaintiff asserts following claims: (1) 42 U.S.C. § 1983 due process claim for denial of a fair trial against the Officer Defendants; (2) 42 U.S.C. § 1983 for illegal detention and prosecution pursuant to the Fourth and Fourteenth Amendments; (3) 42 U.S.C. § 1983 failure to intervene against the officer Defendants; (4) 42 U.S.C. § 1983 conspiracy to deprive Mr. Williams of his constitutional rights; (5) 42 U.S.C. § 1983 Monell violations against the City of Jacksonville[2]; (6) state law malicious prosecution against the Officer Defendants; (7) state law intentional infliction of emotional distress against the Officer Defendants; and (8) state law civil conspiracy

---

[2] Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

against the Officer Defendants. Defendants seek summary judgment on all counts.

## A. Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats &

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### 1. Qualified Immunity

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[Qualified] immunity protects all but the plainly incompetent or one who is

- 5 -

knowingly violating the law." White v. Pauly, 137 S.Ct. 548, 551 (2017) (internal quotations and citation omitted). The purpose of qualified immunity "is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. . . ." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

For qualified immunity to apply, "a public official must first demonstrate that he was acting within the scope of his or her discretionary authority." Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citation omitted). If this is established, the burden shifts to the plaintiff "to demonstrate that qualified immunity is inappropriate." Id. To do that, the plaintiff must show that when viewed in the light most favorable to him, the facts demonstrate the individual defendant violated the plaintiff's constitutional rights, and those rights were clearly established at the time of each individual defendant's actions. See id.; see also Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018) (Courts "must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged."). It is a plaintiff's burden to persuade the Court that qualified immunity does not apply. St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002) ("Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff.").

There are three ways that a right is "clearly established" for purposes a

qualified immunity analysis:

> (1) case law with indistinguishable facts clearly
> establishing the constitutional right; (2) a broad
> statement of principle within the Constitution,
> statute, or case law that clearly establishes a
> constitutional right; or (3) conduct so egregious that a
> constitutional right was clearly violated, even in the
> total absence of case law.

Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009)

(internal quotations and citations omitted). The guiding principle is that the

"contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." Wilson v. Layne,

526 U.S. 603, 615 (1999) (internal quotations and citation omitted); see also

Jones v. Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (reiterating that public

officials are not obligated to draw analogies from previously decided cases to

determine the legality of their conduct). However, it is not necessary that the

specific action in question has been previously declared unlawful. Id. "An

official sued under § 1983 . . . cannot be said to have violated a clearly

established right unless the right's contours were sufficiently definite that

any reasonable official in the [official's] shoes would have understood that he

was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778–79 (2014).

To "prevail on a civil rights action under § 1983, a plaintiff must show

that he or she was deprived of a federal right by a person acting under color

of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). In this case, Plaintiff cites to due process protections under the Fourth and Fourteenth Amendments.

The Fourth Amendment ensures citizens the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. This means "an officer who arrests an individual without probable cause violates the Fourth Amendment[.]" Skop v. City of Atlanta, GA, 485 F.3d 1130, 1137 (11th Cir. 2007). Still, the arresting officer is shielded from liability if an objective officer under similar circumstances could have believes that probable cause existed at the time of the arrest. Id. This often referred to as "arguable probable cause." Id. The standard protects officers making reasonable judgment calls even though they turn out to be mistaken. Id.

Due process claims under the Fourteenth Amendment are far more nebulous and, as any legal scholar knows, subject to an ever-evolving body of case law. See Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 231 (2022) (reversing decades old precedents involving the Fourteenth Amendment and acknowledging "due process . . . guarantee[s] some rights that are not mentioned in the Constitution."). Id. In announcing what is protected by due process, the Supreme Court stated "that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively deeply rooted in this Nation's history and tradition[.]" Washington

- 8 -

v. Glucksberg, 521 U.S. 702, 720–21 (1997) (internal quotations omitted). There must also be a "careful description" of the fundamental liberty interest asserted. Id. at 721.

Preliminarily, it is clear that Defendants were acting in the scope of their role as law enforcement officers when they were investigating the crimes at issue in this case and in arresting Mr. Williams. See Fransen, 857 F.3d at 851 (determining that for qualified immunity to apply, "a public official must first demonstrate that he was acting within the scope of his or her discretionary authority").

For this Court to deny qualified immunity, a plaintiff must offer facts demonstrating the individual defendant(s) violated the plaintiff's constitutional rights, and those rights were clearly established at the time of each individual defendant's actions. Fransen, 857 F.3d at 851. As to Mr. Williams's arrest, Mr. Williams must offer evidence that there was no arguable probable cause at the time of his arrest. On this point, Mr. Williams fails.

Mr. Williams was one of two individuals in the Buick, present near the crime scene when the victims were shot, and his description matched several of the physical characteristics given by eyewitnesses. (Doc. 104.19 at 4). It is undisputed that Mr. Williams owned the Buick. After the shooting, the shooter returned to the Buick and drove away. Id. at 1-2. The Buick was

reported as being involved in a hit and run accident fleeing the crime scene. Id.

Mr. Williams fled from the vehicle without a shirt as law enforcement officers pursued. Id. at 2. When interviewed, Mr. Williams lied to officers about his involvement in the robbery and claimed he had been with "his old lady" all day. Id. at 4. He also admitted having driven the car on the day of the crime. Id. The combination of these facts coupled with Mr. Williams's dishonesty and flight provided more than ample cause for his arrest for the robbery and attempted murder. See United States v. Hamilton, 168 F.4th 1354, 1360 (11th Cir. 2026) ("For many years our case law has been clear that evidence of flight or concealment may be admissible to establish consciousness of guilt."). Mr. Williams's contentions that Defendant Officers' investigation was not thorough or complete does not alter this conclusion. See Paulk v. Benson, No. 22-11635, 2023 WL 5624537, at *4 (11th Cir. Aug. 31, 2023) (citing cases "that an arresting officer is not required to sift through conflicting evidence or resolve issues of credibility before making an arrest.") (internal quotations omitted). Mr. Williams's remaining substantive claims are premised on two sequences of events: (1) the Defendant Officers obfuscated information around the hypnosis preceding Mr. Phillips identification of Mr. Williams as the shooter; (2) the Defendant Officers failed to provide a potentially exculpatory note.

Whatever the shifting of landscapes of due process protects, nothing is more fundamental to this country's history than a right to a fair trial. "In Brady v. Maryland[3] and its progeny [ ] the Supreme Court held that the Due Process Clause [and thus, the right to a fair trial] of the Fourteenth Amendment requires the government to disclose to a criminal defendant material evidence known to the government that is exculpatory or which could be used to impeach a significant government witness." Whidden v. Roberts, No. 5:19-CV-80-MCR/MJF, 2020 WL 6566961, at *2 (N.D. Fla. July 28, 2020) (collecting cases), report and recommendation adopted, No. 5:19CV80-MCR/MJF, 2020 WL 6566322 (N.D. Fla. Nov. 9, 2020). For civil liability to arise for a due process violation for failure to provide Brady material, there must be evidence that the failure was more than negligent. Porter v. White, 483 F.3d 1294, 1308 (11th Cir. 2007).

There must also be a "affirmative casual connection" between the alleged constitutional violation and the Defendant Officers. Id. Where investigators disclose the subject information to prosecutors or if the prosecutors had possession of the information from another means, the casual connection is severed. Id.; see also, Kelly v. Curtis, 21 F.3d 1544, 1552 (11th Cir. 1994) (explaining that law enforcement officers have no duty to

---

[3] Brady v. Maryland, 373 U.S. 83, 84 (1963).

defense counsel to disclose exculpatory evidence as that duty rests with the
prosecution alone).

Mr. Williams stakes his case on the Defendant Officers' alleged failure
to disclosure the hypnosis of Mr. Phillip's s to the prosecution. He offers the
following evidence in support. In an October 27, 1975, entry in Defendant
Ritchey's narrative, Mr. Phillips identified Mr. Williams as the shooter. (Doc.
104.19 at 13). Mr. Phillips again identified Mr. Williams as the shooter on
October 29, 1975. Id. In neither report notation did Defendant Ritchey
mention the hypnosis that had taken place prior to Mr. Williams being
identified. Id. Defendant Richey explained that the reason he did not note the
hypnosis is because the prosecutor, Ralph Greene instruction him not to
include it.[4] (Doc. 104.17 at 92).

Mr. Williams's criminal trial counsel, Bill White, was never told that
Mr. Phillips was hypnotized. (Doc. 104.35 at 22). If Defendant Ritchey is to be
believed, Mr. White was not informed of the hypnosis at Mr. Greene's

---

[4] Given this record, the Court must find that Mr. Greene instructed Defendant Ritchey
to omit mention of the hypnosis. Because prosecutors are immune in their roles as advocates,
Mr. Williams would likely not have a sustainable case against Mr. Greene. See Hart v.
Hodges, 587 F.3d 1288, 1295 (11th Cir. 2009) ("Prosecutors have absolute immunity when
filing an information without investigation, filing charges without jurisdiction, filing a
baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to
investigate complaints about the prison system, and threatening further criminal
prosecutions.") (internal quotations and alterations omitted). However, Florida allows for
wrongfully convicted individuals to recover when, among other things, an individual presents
verifiable and substantial evidence of actual innocence, which, in this case, has not yet
happened. Fla. Stats. § 961.03.

direction. If Mr. Greene knew of the hypnosis, then the causal chain is severed and no liability against the Defendant Officers exists.

The Court must take Defendant Ritchey's version of events as true unless Mr. Williams offers evidence that conflicts with Defendant Ritchey's testimony. See Hinson v. Clinch Cnty., Georgia Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (stating that the Court "may not make credibility determinations. . .") (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)). On this point, Mr. Williams first cites to the deposition of Defendant Ritchey's partner, W.J. Mooneyham. When questioned about Mr. Williams's case, Defendant Mooneyham did not remember that Mr. Greene was the lead prosecutor in Mr. William's case. (Doc. 104.61 at 34). When Mr. Williams's counsel asked a follow-up question about whether Defendant Mooneyham remembered Mr. Greene instructing the Defendant Officers to omit the disclosure of the hypnosis, Defendant Mooneyham responded, "I'm sorry sir. Just . . ." before agreeing that he could not recall any such instruction. Id. at 34-35.[5] Defendant Mooneyham did not testify that the instruction was not given.

---

[5] Mr. Williams's counsel asked Defendant Mooneyham a series of questions concerning Mr. Greene's character and propensity for being "honorable," which the Court cannot consider in resolving the instant Motions.

Next, Mr. Williams cites to the deposition testimony of Mr. Greene. During his deposition, Mr. Greene was not sure who Mr. Phillips was. Mr. Greene testified that he had "no real recollection of any hypnosis in the . . . case on the part of the [state]." Id. at 104.50 at 80. He also said he did not remember most of the "middle" of the case, just "an outline" because he handled thousands of cases. Id. at 106. Mr. Greene went on to testify that Mr. White utilized hypnosis on Mr. Williams to prove his innocence. Id. at 108. Mr. Greene was sure the hypnosis occurred prior to Mr. Williams's conviction. Id. at 112. Mr. Greene did not remember communicating with any of the officers involved with the case and any of the information they provided. Id. at 132-33. Mr. Greene was adamant that he did not remember the details of the case. Id. at 134. Despite prefacing his answers that he did not remember, Mr. Williams's counsel pressed Mr. Greene to provide more details around the evidence the Defendant Officers provided in the case. Id. at 135. Mr. Greene responded equivocally with each answer, "As far as I know I did [turn over exculpatory evidence]." "I would have intended to . . . but I don't have any particular recollection of it at all." Id. at 135-36.

Mr. Greene remembered a man was shot in Mr. Williams's case, but could not recall his name. Id. at 137. He did not remember if Mr. Phillips was unable to identify Mr. Williams when originally questioned. Id. at 138. Mr. Greene could not remember Mr. Phillips identifying Mr. Williams as the

- 14 -

shooter either, or that there was a change in Mr. Phillips ability to identify the shooter. Id. When shown police reports of Mr. Greene's efforts in the investigation, including interviewing witnesses, Mr. Greene could not remember the reports and claimed he could not remember seeing them. Id. at 142. Mr. Greene could not remember any additional information "at all." Id. at 143.

When asked more about hypnosis, Mr. Greene was confident it was Mr. Williams who introduced the issue to the case. Id. at 154-55. When counsel tried to orient Mr. Green toward the hypnosis of Mr. Phillips, Mr. Greene asked, "Mr. Phillips is who?" Id. at 155. Mr. Greene agreed the issue of hypnosis of Mr. Phillips did not occur during the trial and he did not know Mr. Phillips had been hypnotized. Id. at 156. However, he also said he did not remember Mr. Phillips identifying Mr. Williams at all. Id. at 163-64.  Then Mr. Greene was asked specifically whether any of the officers told him that they hypnotized Mr. Phillips and prior to the hypnosis Mr. Phillips could not identify Mr. Williams as the shooter. Id. at 164. Mr. Greene responded, "How many times am I going to tell you? No, they didn't. I don't recall. If they did, I don't remember it at all . . . ." Id. at 5.

Mr. Greene did not remember anything about the Defendant Officer's deposition testimony. (Doc. 104.51 at 2). When asked further, Mr. Greene explained that" I don't have any memory of this at all." Id. at 4. Mr. Greene

was asked to speculate about what he would do with exculpatory evidence, or if his actions were consistent with his ethical obligations. Id. at 4-6. Mr. Greene said he would have followed the law and been ethical, but at no point could he recall what really happened. Id. In fact, when Mr. Greene was asked about hypnosis generally, he was not sure whether it was considered Brady material back in the 1970s or that he even knew about the Brady case. Id. at 12. Mr. William's counsel even showed Mr. Greene a letter, wherein the First District Court of Appeal for Florida upheld the use of hypnosis in witness identification in 1979. Id. at 17.[6] Mr. Greene could not remember anything about that case either. Id. at 19.

Mr. Greene never remembered Defendant Mickler testifying in this case or even meeting him. Id. at 46. Mr. Greene was against the SAO's stance regarding vacating Mr. Williams's conviction and still believes Mr. Williams is guilty. Id. at 48. Mr. Greene admits the police report narrative says that Mr. Phillips was unable to identify Mr. Williams at first. Id. at 65. Mr. Greene said Mr. Phillips later identification should have sent up a "red flag" to him because he would wonder how Mr. Phillips's memory was refreshed, but again, he could not remember details around the case. Id. at 66.

---

[6] The case cited was Clark v. State, 379 So. 2d 372, 373 (Fla. 1st DCA 1979) (the "Clark case"). The court upheld Defendant Mickler's use of hypnosis in 1978 that enabled a witness who could not identify a criminal defendant to later identify him. Id. at 375.

Mr. Greene was confident he would have met with Mr. Phillips and have expected Mr. Phillips to reveal that he had been hypnotized. Id. at 81. Mr. Greene admitted he had the police report detailing Mr. Phillips initial inability to recall who shot him, and that he should have asked more questions. Id. at 83. Mr. Greene remembered some "allusion" to hypnosis before trial but was not able to specify what report. Id. at 92.

Mr. Williams's counsel asked Mr. Ritchey whether Mr. Greene ever told him not to mention hypnosis when Mr. Ritchey was deposed during the criminal case. (Doc. 104.18 at 162). Mr. Ritchey stated that Mr. Greene told him to not include mention of hypnosis in the police report, but did not specifically say do not mention it during his deposition. Id. at 163. Mr. Ritchey recorded the hypnosis and made notes about the sessions in case there were questions about its suggestiveness vel non. (Doc. 104.17 at 90). In his deposition, Mr. Phillips testified that the Defendants did not pressure him, suggest a particular individual, or point to a specific subject. (Doc. 104.31 at 51).

Mr. Ritchey admitted he did not disclose that Defendant Mickler hypnotized Mr. Phillips but explained that it was because Defendant Mickler's purpose was to witness the identification of Mr. Williams at a later photo line-up. (Doc. 104.18 at 166). Defendant Mickler was not being called or listed as witness because of his role in hypnotizing Mr. Phillips. Id. While

- 17 -

Defendant Ritchey admitted his response was not "complete" it also was not false . . . and certainly not intentionally so, and that he would have disclosed the hypnosis if directly asked about it. Id. Similarly, the SAO disclosed that Mr. Phillips could not identify a suspect at first. (Doc. 104.38 at 1). The SAO also disclosed Defendant Mickler as a witness. (Doc. 104-105). He was not deposed. Mr. Phillips was never instructed to not mention his hypnosis and Mr. Williams's defense counsel never asked about it. (Doc. 104.31 at 64-65).

The issue of hypnosis came to light to the SAO when the SAO was reviewing its file on Mr. Williams in 2023 and came across a note and a newspaper article about hypnosis. (Doc. 104.67 at 41-42). The note was on a yellow legal notepad that appeared to have prepared in relation to witness preparation and included either the word "hypnosis" or "hypnotist" and "LT." Id. at 47-48. LT is often used for lieutenants and corresponded with Defendant Mickler's rank at the time of Mr. Williams's prosecution. Id. at 48.

Mr. Ritchey was also asked about a different note that was not given to Mr. Williams's defense that described what Mr. Williams and Mr. Mitchell were wearing. (Doc. 115.16 at 12). The note described Mr. Mitchell as wearing a red, white, and blue stripped shirt—the same as the shooter at the produce store. Id. The note purported to document Mr. Williams's statements. Id. Mr. Williams's defense attorney was not provided a copy of the note. (Doc. 115.17 at 2). Defendant Ritchey did not know about the note, because it was

found in another case file involving a crime wherein Mr. Mitchell was

suspected. (Doc. 104.51 at 32-34).

With this evidence in mind, there is not a material disputed fact

regarding whether the SAO knew that Mr. Phillips was hypnotized before

trial. No reasonable juror could find that Mr. Greene unequivocally stated

that he did not know Mr. Phillips was hypnotized. While he claimed to have

not known of Mr. Phillip's hypnosis, that is because in Mr. Greene could not

recall <u>any</u> of the particulars regarding certain aspects of the case. Mr.

Greene's confusion was evident from the start in the mix-up of who was

subject to hypnosis, and that it was Mr. Williams's counsel that was its

proponent. Moreover, Mr. Greene repeatedly and ad nauseum disclaimed

remembering any details about the case besides what he initially stated. Mr.

Williams's counsel continually lead or tried to lead him into stating facts he

clearly did not remember. The same can be said of Defendant Mooneyham

who could not recall the facts of the case either.

In connection with this civil action, Mr. Ritchey testified that Mr.

Greene knew of the hypnosis and did not voluntarily disclose the hypnosis to

the defense team. It is undisputed that the SAO was in possession of the

information regarding hypnosis in their own admissions and in the testimony

of Ms. Thibodeau that she found notes about the hypnosis on a yellow legal

pad in the SAO file of Mr. William's case. Mr. Greene's testimony falls short

of providing conflicting evidence. See Linao v. GCR Tire Centers, No. 2:09-CV-134-RWS, 2010 WL 4683508, at *5 (N.D. Ga. Nov. 12, 2010) (collecting cases that a witness's failure to remember does not create a genuine issue of material fact). His testimony was equivocal and consistently self-qualified by him not remembering.

Even assuming there was an issue of material fact regarding disclosure of the hypnosis, there is no evidence that the Defendant Officers did so with something more than negligence or intentionality or recklessness to deprive Mr. Williams of a fair trial. There is also insufficient evidence of causation.

As to the first point, none of the Defendant Officers lied about the hypnosis. Hypnosis was allowable and, in fact, eventually affirmed on appeal in a subsequent case involving a different criminal defendant by Defendant Mickler. In other words, there was no reason for Defendants to think they did something wrong in hypnotizing Mr. Phillips. The Defendant Officers never told Mr. Phillips to not disclose his hypnosis and never suggested that Mr. Williams was the culprit. Defendant Ritchey even recorded the session and made notes about it. There is no evidence that the Defendant Officers conspired to hide the information about the hypnosis either, or that the hypnosis could be potentially exculpatory, and therefore, that they could even be considered as interfering with Mr. Williams's right to a fair trial.

- 20 -

It also cannot be said the Defendant Officers failure to disclose the hypnosis session was the proximate cause of Mr. Williams's conviction. The evidence against Mr. Williams was strong, and his defense counsel failed to inquire as to why Mr. Phillips was suddenly able to identify Mr. Williams as the shooter after not being able to identify him originally. Defendant Mickler was not deposed, and no further inquiries were made. In other words, the Defendant Officers were but one possible means to discovery that Mr. Phillips had been hypnotized.

Finally, the there is no evidence that the Defendant Officers intentionally, recklessly, or more than negligently suppressed the note describing Mr. Williams's and Mr. Mitchell's attire the day of the shooting. The note ended up in another file pertaining to another shooting involving Mr. Mitchell. There is no evidence of something more than negligence, much less intentionality in its suppression. The note describes Mr. Williams's claim as to what he and Mr. Mitchell were wearing and how Mr. Williams became involved in the incident.[7] (Doc. 115.16 at 12). Because they were Mr. Williams's statements, they are not <u>Brady</u> material. He necessarily already knew of their existence and was free to testify to the information. He has not

---

[7] While Mr. Williams proposed a sur-reply asking the Court to treat the note as describing an eyewitness account other than Mr. Williams, the request ignores the fact that only Mr. Williams would have been in a position to be explaining how he became involved with Mr. Mitchell and the shooting at the produce store.

shown his own statements were admissible; the Defendant Officers suppressed the information; or that the note would have undermined his conviction. In fact, Mr. Greene thought the note helped his case that Mr. Williams was the shooter. (Doc. 104.51 at 74-75). Even construing the note as documenting another witness's description (which is not reasonable in the circumstances), there is no still no evidence that note was suppressed through anything other than mere negligence.

### 2. Failure to Intervene

"A police officer is liable under § 1983 if he 'fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence.'" Stewart, v. City of Homewood, Alabama, et al., No. 2:19-CV-00955-AKK, 2019 WL 5696183, at *3 (N.D. Ala. Nov. 4, 2019) (quoting Sebastian v. Ortiz, 918 F.3d 1301, 1312 (11th Cir. 2019)); "[L]iability for failing to intervene arises only when the officer is in a position to intervene and fails to do so." Prosper v. Fla. Dep't of Corr., No. 5:09CV256/MCR/MD, 2010 WL 1380374, at *4 (N.D. Fla. Feb. 24, 2010), report and recommendation adopted, No. 5:09CV256/MCR/MD, 2010 WL 1380370 (N.D. Fla. Mar. 31, 2010).

Plaintiff's claims for failure to intervene fails for two reasons. First and most importantly, a failure to intervene claim cannot survive when there was not a duty to intervene. There is no duty to intervene when there is no

underlying substantive violation. <u>Callwood v. Jones</u>, 727 F. App'x 552, 560 (11th Cir. 2018) ("Because the law does not clearly establish that [the defendant] used excessive force, the other officers had no duty to intervene."). There is no substantive violation in this case. Secondly, there is no evidence the Defendant Officers knew how Defendant Ritchey would testify, or that Defendant Ritchey was not following Mr. Greene's instructions. In fact, as hypnosis was permissible at that time, the Defendant Officers had no reason to think anything untoward was happening. Because there was not wrongdoing by the Defendant Officers, there is no culpability that can attach to the City for the Officer's conduct.[8]

3. State Law Malicious Prosecution

To succeed on a claim of malicious prosecution, the Florida Supreme Court announced that a plaintiff must establish that:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the

---

[8] There is no evidence from which a jury could find any wrongdoing on behalf of the Sheriff that caused injury to Plaintiff in this case.

present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994).

As this Court has already concluded, there was ample probable cause for Mr. Williams's arrest and prosecution. Mr. Greene stated that Mr. Phillips's testimony was not needed for his case, therefore, it cannot be said Mr. Phillips's identification of Mr. Williams caused the prosecution to proceed. Nothing demonstrates this more clearly than knowing that Mr. Greene charged Mr. Williams before Mr. Phillips's hypnosis and identification.

There is a lack of evidence that the Officer Defendants possessed malice in their investigation of Mr. Williams's case, or their role in his prosecution. As to the issue of causation, there is also a lack of evidence that the Officer Defendant's failure to disclose the hypnosis to the SAO injured Mr. Williams. Mr. Greene charged Mr. Williams before the hypnosis occurred and stated he would have prosecuted Mr. Williams without Mr. Phillips's identification. Mr. Williams or the SAO could have and should have learned about the hypnosis from Defendant Mickler or Mr. Phillips upon reasonable investigation; hypnosis was permissible; and there is no evidence the hypnosis was conducted in a manner that would have given cause for a jury to discount its use at the time.

- 24 -

4.  State Law Claims of Intentional Emotional Distress, Conspiracy, and Negligent Hiring

Under Florida law a plaintiff must allege "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) that the conduct caused emotional distress; and (4) that the distress was severe" to state a claim for IIED.  Parkey v. Carter, 702 F. Supp. 3d 1253, 1258 (S.D. Fla. 2023) (citing Nettles v. City of Leesburg Police Dep't, 415 F. App'x. 116 (11th Cir. 2010)). Outrageous conduct is "behavior that goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community[.]" Rubio v. Lopez, 445 F. App'x 170, 175 (11th Cir. 2011).

Consistent with its findings above, there is no evidence that Defendants deliberately or recklessly inflicted suffering upon Mr. Williams. Defendant Mickler hypnotized Mr. Phillips, which was acceptable at the time, and in no way tried to influence Mr. Phillips's identification. While their conduct was imperfect by today's standards, at the time of Mr. Williams's trial and preceding investigation, there is no evidence of outrageous conduct. Moreover, as previously stated, there is no evidence of conspiracy or that the City of Jacksonville negligently hired, supervised, or retained the Defendant Officers.

- 25 -

Accordingly, after due consideration, it is

**ORDERED:**

1. The Motions for Summary Judgment filed by Defendants Charles Ritchey, W. J. Mooneyham, the Estate of D. L. Starling, the Estate of Bryant Mickler, and the City of Jacksonville (Docs. 105-109) are **GRANTED**.

2. The Motion for Miscellaneous Relief (Doc. 110) and Motion to Stay (Doc. 136) are **DENIED as moot**.

3. The Clerk of the Court shall enter judgment in Defendants favor and against Plaintiff and close the file.

**DONE** and **ORDERED** in Jacksonville, Florida this 10th day of June, 2026.

_____
BRIAN J. DAVIS
United States District Judge

Copies furnished to:

Counsel of Record

- 26 -